[Civ. No. 14769.   Second Dist., Div. One.   May 28, 1945.]

JOHN T. PRIDDEL, Plaintiff and Respondent, v. ANDREW
SHANKIE, Appellant; COUNTY OF LOS ANGELES,
Defendant and Respondent.

Norval J. Cooper for Appellant.

Loeb & Loeb and Dwight W. Stephenson for Plaintiff and Respondent.

J. H. O'Connor, County Counsel, and L. K. Vobayda, Deputy County Counsel, for Defendant and Respondent.

DORAN, J.—This is an appeal from a judgment of partition ordering the sale of certain real property and distribution of the proceeds from such sale,. after payment of taxes, expenses of sale, etc., to appellant and respondents as their interests appear. The record discloses that the plaintiff and defendant Shankie each owned an undivided one-half interest in the parcel which was the subject of the partition suit, and that Shankie's one-half interest therein was at all times separate property, having been acquired through a devise while Shankie was a single man. The county of Los Angeles extended certain hospital care to appellant Shankie and on December 19, 1941, Shankie executed and delivered to the county a promissory note secured by a mortgage covering his one-half interest in said property, agreeing to pay the county for

all aid theretofore and thereafter extended. At the time of the commencement of the partition action, aid consisting of hospital care given to Shankie personally, had amounted to $1,295.22, which amount is not in dispute.

The real estate sought to be partitioned consists only of a rectangular city lot, 40 by 140 feet, located in the middle of a block and facing Buchanan Street in the city of Los Angeles, and having a paved alley in the rear. This lot is improved with two residential buildings,—one with four rooms which is occupied by tenants; the other described as a two ½-room house occupied by appellant and his wife Annie Shankie. There are also two garages,—one double and one single garage. The current market value is estimated by appellant to be $3,000.

The respondent County of Los Angeles, made a party defendant to the partition action by reason of its mortgage covering the interest of the defendant Shankie, filed a cross-complaint praying that if partition be granted, the mortgage in question be adjudged valid and that if a partition sale be ordered, the amount of the mortgage lien be paid to the county from the share of the defendant Shankie. The respondent county, in the words of its brief, "is not interested in the merits of the partition suit as between Priddel and Shankie and stands completely neutral on the question of whether or not any partition should be made." It was "the county's position only that if partition is made some proper disposition must be made of the county's mortgage."

The answer filed by the appellant Shankie to the complaint for partition admitted all of the material allegations of such complaint and set up three affirmative defenses; (1) that appellant is a married man residing upon the property with his wife, Annie Shankie, that on August 4, 1943, appellant executed a Husband's Declaration of Homestead covering his undivided interest in said property, which was recorded August 5, 1943, and that a partition cannot be made without great prejudice nor can the property be sold without destroying such homestead; (2) that appellant's wife is a necessary party defendant; (3) that plaintiff is neither a citizen nor a resident of the United States and that therefore the Alien Property Custodian is a necessary party defendant in this action.

Appellant's answer to the cross-complaint of the county of Los Angeles, admitted by failure to deny, all material allega-

tions, and pleaded four affirmative defenses, namely (1) that the county's mortgage incorporated by reference sections 12 and 13 of article XVI of the California Constitution, adopted on November 5, 1940, which releases mortgages taken to secure reimbursement of old age security; (2) that the provisions of such mortgage constitute a perpetual estate in and lien upon the property described therein and upon all other real property in which appellant has or may hereafter acquire any interest, and that such mortgage cannot be paid or satisfied within the lifetime of all persons in being at the date of its execution, or within a period of twenty-five years from the date of its creation, or within any other period, or at all, and that such mortgage is a perpetuity and void *ab initio* under article XX, section 9 of the Constitution of California; (3) that said mortgage perpetually suspends the absolute power of alienation of the title to the real property therein described and all other real property now owned or hereafter acquired by the appellant, in violation of Civil Code, sections 715 and 716; and (4), that at the date of the execution of said mortgage appellant was and still is a married man residing on the property in question, and that on August 4, 1943, appellant executed a husband's declaration of homestead covering his one-half interest therein, which was recorded on August 5, 1943, and that the residential lot on which they reside, cannot be sold without destroying the homestead "in flagrant disregard of the Homestead laws of the State of California."

The trial court found that the mortgage to the county of Los Angeles did not constitute a perpetual estate in or to or a lien upon the real property described therein or upon other property in which the appellant has or may hereafter acquire any interest; that such mortgage did not perpetually suspend the absolute power of alienation; that the plaintiff was neither a citizen nor a resident of the United States but was a resident and citizen of Canada; that neither the Alien Property Custodian of the United States, nor Annie Shankie, the wife of the appellant, were proper or necessary defendants; that the small residential lot sought to be partitioned, was so situated that partition could not be made without great prejudice and that a sale thereof was necessary. The judgment therefore ordered a sale by referees of said property at private sale and directed that the proceeds therefrom should be applied first, to the payment of taxes; secondly, to the pay-

ment of the referees' fees, disbursements and expenses of the sale; thirdly, to the payment to plaintiff of costs taxed at $23; fourthly, to the payment to the plaintiff of one-half of the balance remaining; and from the other half of the balance remaining, $1,295.22 to be paid the county of Los Angeles. If the balance remaining after payment to the plaintiff of one-half thereof, be insufficient to pay to the county the said sum, then the entire balance was ordered paid to the county. If the balance remaining after payment of the plaintiff's one-half should exceed the sum of $1,295.22, then the balance remaining after payment to the county of $1,295.22, was ordered paid to the appellant. Upon payment to the county of the moneys ordered to be paid, it was adjudged that the lien of the county should be extinguished and that the property in question should be released from the lien of the mortgage.

There are two basic questions involved in this appeal, to wit: (a) Where real property is owned by two persons as tenants in common, has one cotenant an absolute right to have the property partitioned or sold, if it appears that a partition cannot be made without great prejudice to the parties, or is such right discretionary with the court; and (b) Does the recording of a declaration of homestead by one cotenant on his undivided interest deprive the other cotenant from having the property partitioned or sold if it appears that a partition cannot be made without great prejudice to the parties?

The action of partition is a special proceeding regulated in great detail by the Code of Civil Procedure, sections 752-801, and is said to be more comprehensive in California than in many other jurisdictions. (*Buhrmeister* v. *Buhmeister*, 10 Cal.App. 392 [102 P. 221].) Section .752, Code of Civil Procedure provides that "Where several cotenants own real property as joint tenants, or tenants in common, in which one or more of them have an estate of inheritance, . . . an action may be brought by one or more of such persons . . . for a partition thereof according to the respective rights of the persons interested therein, . . ." and in section 763 it is provided that "If it appears by the evidence . . . that the property or any part of it is so situated that partition cannot be made without great prejudice to the owners . . . the court may . . . order the sale thereof; otherwise, upon the requisite

proofs being made, *it must order* a partition. . . ." (Italics added.)   As was declared by the court in *Rich* v. *Smith*, 26 Cal.App. 775, 783 [148 P. 545], "Ordinarily, if the party seeking partition is shown to be a tenant in common, and as such entitled to the possession of the land sought to be partitioned, the right to partition is absolute, and cannot be denied, 'either because of any supposed difficulty, nor on the suggestion that the interest of the cotenants will be promoted by refusing the application or temporarily postponing action, . . .' (30 Cyc., 177, 178, 189)."   The above rule was approved in *Harper* v. *Superior Court*, 140 Cal.App. 5, 6 [34 P. 1063].

█ Appellant's contention that the recording of a homestead declaration by one cotenant covering the undivided one-half interest of such cotenant will defeat the other cotenant's right to partition, cannot be sustained.   In an annotation found in 140 American Law Reports page 1170, 1171, it is said: "The cases uniformly hold or assume . . . that the homestead rights of a cotenant, or of his spouse or family, in respect of his interest in the common property are not a bar to partition." The reason no California cases are cited in said annotation is probably, as suggested by respondent's brief, because in California prior to 1929 a homestead could not be declared on property held in coownership.   In the *Estate of Kachigian*, 20 Cal.2d 787 [128 P.2d 865] (Sept. 1942), deciding that the probate court could set apart to a widow a homestead out of her deceased husband's undivided one-half interest in real property held by him and a third person as tenants in common, the court declared: "It cannot be said that the rights of the other cotenant are in any way prejudiced, as the homestead claimant, or his surviving family, acquires only such rights of occupancy as he had before the creation of the homestead, and the other cotenant's interest is in no way affected; . . . *If he objects to his cotenant, his remedy is by partition.*" (Italics added.)   The case of *Mills* v. *Stump*, 20 Cal.App. 84 [128 P. 349], quoted at length in the appellant's brief, is not authority for the contention that a homestead declared upon an undivided interest of one cotenant is a bar to the other cotenant's right to partition.   In the Mills case, the court in the administration of a deceased husband's estate comprising 320 acres of land, assigned a homestead to the widow of 25 acres including improvements, and the estate was

distributed to the heirs as tenants in common, *subject to the homestead*. The court correctly held that the widow's homestead, "having been carved out of the husband's separate estate . . . for her sole use during her natural life," was incapable of compulsory partition or sale. In the case at bar the appellant does not possess the right to sole use of the property as did the widow in the Mills case. Moreover, the case of *Mills* v. *Stump* was decided prior to the amendment of 1929 permitting a homestead to be declared on an undivided interest. The other case cited by appellant, *Walton* v. *Walton* (1943), 59 Cal.App.2d 26 [138 P.2d 54], is likewise inapplicable to the present situation and merely held that after a wife has impressed premises with a valid homestead, the husband "cannot by an action in partition bring about the destruction of a homestead declared by her on property in which he owns a lesser estate, namely, only a joint tenancy interest." In the case at bar the appellant Shankie and the respondent Priddel are not husband and wife and Shankie's homestead covered only the undivided half interest of one tenant in common.

Under Point 2 of appellant's brief it is claimed that "The Superior Court's finding that the real property involved herein could not be partitioned in kind is not supported by any evidence whatsoever." However, the record discloses that appellant's own testimony indicates that the property is an inside lot, 40 by 140 feet, improved by two dwelling houses and three garages so situated that the property could not be partitioned in kind without great prejudice to the parties. Any other finding than that made would have been totally unsupported by the evidence. It is quite true, as stated by the court in *Williams* v. *Wells Fargo Bank etc. Co.*, 56 Cal. App.2d 645, 647 [133 P.2d 73], that "partition in kind is favored by the law," but this case merely decided that in reference to a rectangular parcel of land, a mile long and a half mile wide, containing 310 acres, a finding that the property could not be partitioned in kind without great prejudice, was not supported by sufficient evidence.

Annie Shankie, the wife of the appellant was not a necessary party defendant to the action in partition, for according to the testimony appellant's undivided interest in the property was acquired in 1928 by a decree of distribution, at which time the appellant was a single man, not having

married Annie Shankie until 1939, and no agreements or deeds had been made conveying any portion of appellant's interest to the wife. It therefore appears that Annie Shankie had no interest in the property except such as may have been acquired under the declaration of homestead, and according to the record such declaration was not recorded until after the complaint for partition had been filed and the *lis pendens* recorded.

Appellant's argument that the respondent Priddel was barred from maintaining an action for partition for the reason that said respondent was a nonresident alien living in Ontario, Canada, and hence perhaps not eligible to take property by succession or testamentary disposition, is without merit. Priddel, in bringing this action of partition, was not seeking to acquire this property by either succession or testamentary disposition.

That the judge who presided at the trial of the case at bar and later denied appellant's motion for a new trial, received a portion of his salary from the county of Los Angeles which is a defendant-cross-complainant herein, was not a fact presenting such personal interest as would disqualify the judge from so presiding. Nor is there any matter of public interest or of public policy shown which would work such a disqualification. The case of *Lindsay-Strathmore I. Dist.* v. *Superior Court*, 182 Cal. 315 [187 P. 1056], cited as authority for this point, bears no resemblance to the facts in the case at bar.

An entirely different phase of the present litigation is presented by the appellant's various objections to the mortgage security held by the county of Los Angeles for hospital aid advanced to appellant in the sum of $1,295.22, and the county's cross-complaint in reference thereto. In the judgment of partition this amount was ordered paid to the county out of appellant's share of the money derived from the partition sale. In appellant's Point 6 it is urged that the county's cross-complaint was deficient in that it did not allege that the mortgagor Shankie was an indigent resident of the county when the aid was extended to him, and that there was no evidence to establish the facts of indigency or residence. Such contention has no merit for the reason that the county's action is based not upon any statutory liability to make pay-

ment for aid furnished, but upon a promissory note and mortgage executed by Shankie in which he expressly agreed to pay the county. It is admitted by the pleadings that the aid was received by Shankie, and at the trial appellant's counsel admitted that the charge made therefor was reasonable. This objection does not appear to have been urged by Shankie or suggested during the course of the trial. Furthermore, it is provided by section 1614 of the Civil Code that ''A written instrument is presumptive evidence of consideration.'' In *County of Los Angeles* v. *Hurlbut,* 44 Cal.App.2d 88 [111 P.2d 963], the county in suing an adult child for reimbursement for old age aid rendered to the mother, prepared the complaint on the theory that it was presumed the mother had been found to have all necessary qualifications for the aid given, and no such allegations were inserted in the complaint. Nevertheless, the court said: ''By referring to the *résumé* of the amended complaint in the forepart of this opinion, it will be observed that nothing is absent that is necessary to state a cause of action.'' The case of *Johnson* v. *Santa Clara County,* 28 Cal. 545, cited by appellant, was an action against a county, brought by a private physician who had contracted to care for infirmary inmates ''who might be subjects of medical and surgical treatment,'' and the court held that plaintiffs were obliged to allege and prove that the persons they cared for were indigents whom the county had a duty to support. The Johnson case is not authority for appellant's contention.

■ Appellant's main argument concerning the county's mortgage covered by its cross-complaint is based upon the theory that such mortgage violates the rules against perpetuities and restraints upon alienation. But in California a mortgage gives the mortgagee no right of possession (Civ. Code, §§2920 and 2927), nor is it deemed a conveyance or transfer of title (Code Civ. Proc., § 744; Civ. Code, § 2888.) It has been said that a trust deed cannot be a violation of either the rule against perpetuities or against restraints upon alienation. (25 Cal.Jur. 35.) If a trust deed, which conveys technical title to the trustee, does not violate these rules, manifestly, a California mortgage could not do so.

Appellant complains of the blanket provisions of the county's mortgage by which said mortgage is made to cover not only the property sought to be partitioned but ''all other

real property, wherever situated, in which said Mortgagor now has or shall hereafter acquire any interest. . . ." Such blanket clause, however, can have no bearing on the present case for there is no evidence that the appellant owns or ever did own any other real estate and the county is not relying upon such clause nor attempting to assert its mortgage in respect to any property other than that specifically described therein.

█ The mortgage given by the appellant to the county of Los Angeles also contained a provision securing payment to the county "of all aid or relief heretofore advanced within four years from date hereof or hereafter advanced to Mortgagor *or relatives of Mortgagor*." (Italics added.) Appellant submits that this provision invalidates the mortgage and that "the power of alienation has not only been suspended beyond the period prescribed by our statutes (Civ. Code, §§ 715 and 716) but forever or until the last relative of the mortgagor has passed on to the great beyond." However, as pointed out in the brief filed by the County of Los Angeles, such provision securing the payment of aid rendered to relatives of the mortgagor has no bearing upon the issues of this case since the aid was all rendered to the mortgagor himself. So far as the mortgage creating a perpetual lien is concerned, it should be noted that the judgment rendered provided that upon payment of the sum of $1,295.22 to the county, "its lien on the hereinafter described property shall be extinguished and shall and it is hereby ordered to release said property from the lien of its said mortgage." The appellant is therefore adequately protected against any possibility that the mortgage in question has created some kind of a perpetual and indefinite lien from which there is no escape. There appears to be no possibility or probability that, "an indestructible and perpetual estate has been so created in and to said real property in violation of the rules against perpetuities," nor has attention been directed to any case suggesting that the mortgage in question is vulnerable to such objections.

█ It cannot be said that the taking of such a mortgage is beyond the authority of the county, nor that the mortgage had no lawful object. The object of the mortgage given by the appellant was merely the taking of security for hospital aid which appellant admits was received. Morever, section

2884 of the Civil Code authorizes the taking of security ''for the performance of obligations not then in existence.''

The case of *Winklemen* v. *Sides*, 31 Cal.App.2d 387, 405 [88 P.2d 147], has been relied upon as supporting a contention that the mortgage is void because it contains a provision waiving the provisions of Code of Civil Procedure, section 726 relating to actions for foreclosure of mortgages. There is no question but that that case declares void such a waiver in a deed of trust, but the court did not hold that the entire deed of trust was void, merely saying, ''We regard the *portions* of the deed of trust we are now considering as contrary to the policy of the California law.'' (Italics added.) In any event the validity of the waiver contained in the present mortgage is not in issue because the county never attempted to take advantage of said waiver.

With reference to appellant's argument that the homestead declaration and rights accruing thereunder are superior to the mortgage rights of the county, it is sufficient to point out that the county's mortgage was recorded on April 10, 1942, and that the declaration of homestead was not recorded until August 5, 1943. Civil Code, section 1241, subdivision 4, expressly provides that ''The homestead is subject to execution or forced sale in satisfaction of judgments obtained: . . . 4. On debts secured by mortgages on the premises, executed and recorded before the declaration of homestead was filed for record.''

Appellant's contentions that the mortgage was void because acknowledged before the county clerk, an officer of the mortgagee, county of Los Angeles, is without merit, as is also the argument that the mortgage was void because not signed by the appellant's wife. In respect to the latter point it will be remembered that the property mortgaged was the sole and separate property of Mr. Shankie, and there was no necessity for the wife's signature. The failure of the trial court to make a finding in respect to appellant's first defense set up in the answer to the county's cross-complaint, relating to the provisions of the California Constitution, article XVI, sections 12 and 13 releasing mortgages taken to secure reimbursement of old age security only, cannot be deemed prejudicial error in view of the fact that no evidence on this defense was offered by appellant and the uncontradicted evi-

dence shows that none of the aid extended under the mortgage was old age security. Any finding on this defense must therefore have been adverse to the appellant.

The record discloses that the appellant's rights both in respect to the matter of partition and in reference to the mortgage security held by the county of Los Angeles, have been adequately protected at all points, and the judgment is therefore affirmed.

York, P. J., and Drapeau, J. pro tem., concurred.